Good morning. John Sullivan of Shortcrestman and Burgess for Appellant Gold Eagle Gaming, LLC. And today I'll be speaking on behalf of both appellants. I'd like to reserve five minutes for rebuttal. You may do so. This is a case about enforcing a federal statute. The language of the statute is unambiguous. And this is the statute over here. Could you talk into the mic for me, please? Thanks. The individual Indian owners of any land which is held by the United States in trust for them are authorized, subject to the approval of the Secretary of the Interior, to execute a mortgage or deed of trust to such land. Such land shall be subject to foreclosure or sale pursuant to the terms of the mortgage or the deed of trust in accordance with the laws of the tribe which has jurisdiction over such land, or in the case where no tribal foreclosure law exists, in accordance with the laws of the state or territory where the land is located. Emerald contends that despite this clear language, it doesn't mean what it says, that not all of the state law applies to a foreclosure, just bits and pieces. Now, where did Judge Whaley go wrong? The bankruptcy court agreed with you. Got it right. Pardon? Bankruptcy court got it right, yes, Your Honor. Well, now, where did Judge Whaley go wrong in your view? I had difficulty understanding what his reasoning was, but I think where he went wrong was that he viewed the system that the BIA has for keeping federal records of Indian land somehow preempted the state priority rules in a foreclosure, even though there is no statute or regulation, federal statute or regulation, that either says that or provides for any federal rules. And I think that's a real problem because if not all parts of the state law applies, which ones apply and which ones don't, and what law fills the gaps? And I think more importantly, what if this is a tribal law foreclosure rather than a state, as we had in this case? Are the tribal laws that require recording with the tribe invalid? Emerald cannot cite any federal statute or regulation that even mentions priority rules, none. What is the purpose of the recordation with the BIA? There are, per the 25 CFR Section 150.2M, there are three purposes for the recording. One is to keep a record of the transaction. Second is to preserve a record of the instrument. Preserve a record of the instrument. And the other is to provide constructive notice of the existence of a BIA-approved instrument. Notice to whom? What's the relevance of constructive notice? The relevance of constructive notice is that, as with all constructive notices, it's notice implied by law as opposed to actual notice, so that people are presumed to know that, in fact, these instruments exist because they have constructive notice by law, that they have a knowledge that there's a BIA-approved instrument, whether it be a deed or a deed of trust or whatever else, an easement, or whatever that's been approved by the BIA. What it tells you is that it's BIA-approved, which is significant because it's not BIA-approved, it's void. So this gives constructive notice of what's approved and what isn't approved. And it also provides other information in other contexts. Particularly, it provides information as to what is trust land, whether it's trust land, restricted land. When you get to Indian probate issues where there's fractionated ownership divisions, there's records of that. So it's used for a variety of things. But what it doesn't do is establish priority because nothing in the statute of regulations says there's any rules, federal rules, to establish priority. And, in fact, what the statute says, and the regulation that implements it, is that it's going to be in accordance with the laws of the state, and that's plural, laws. So whatever laws of the state are needed to do the foreclosure or to determine the foreclosure results, that's the laws that apply. MR. What is the relationship between determining a priority and effectuating a foreclosure under state law? In other words, do you have to determine priorities in order to do a foreclosure? Yes. Because under state law, you are required to give notice to all interests that are junior to yours because they will be extinguished by the foreclosure, but they won't be extinguished if they didn't receive notice. So that's one reason why you're interested in priority. You need to know who you have to give notice to. And the second is, once the foreclosure occurs, well, first of all, the junior lien holders may have certain rights under state law to bid in or do different things, and unless you've determined what the priority is, you don't know who those people are. And the third thing is that once the foreclosure occurs, if there's proceeds remaining, there's a bidding war on the property and there's excess proceeds over what the debt is owed, you have to know how to distribute them. And the only way you know that is by priority because the senior interest gets the proceeds first. Emmerle has tried to characterize this as a jurisdiction issue, and it simply is not. Neither the State of Washington or the county recorder or any other state or local entity is attempting to exercise or impose any obligations on any of the parties, Emmerle, Harrison, the Deed of Trust, nor has any state court ever attempted to exercise any jurisdiction over this case or the parties. In fact, quite the opposite. This was a nonjudicial foreclosure. It was approved by the Western District Bankruptcy Court and the Puyallup Tribal Court of Appeals. Harrison brought an eviction action in tribal court. There's simply no action by the State of Washington. What this case does involve, as I said earlier, is enforcing the plain language of a federal statute, and it's not jurisdiction. Can I ask you a hypothetical question? Suppose you had recorded the Deed of Trust with the BIA rather than with the county auditor, and then a few years later they record their lease with the county. Who wins then? Well, that's a great question because under the common law in Washington, assuming it's in Washington foreclosure law, first in time, first in right, the first executed instrument has priority over a later executed instrument. However, there is a statute that alters that priority in certain cases, and what it says is if you have recorded in the state county records and there's an unrecorded interest, the recorded one trumps the unrecorded one. That's a statutory alteration of the common law. We have a federal regulation saying, in addition to that, that if you record in the BIA there's constructive notice given. That's right. Would that mean that under state law, assuming state law applied to determine priority, would the fact that someone recorded first in the interior, in the BIA, give them a priority in state law for anyone who had constructive notice? No. Because the statute is very explicit. It says it has to be recorded in the county real property records. So then you would disagree with the bankruptcy judge's ruling to the extent that, Judge Williams said, as I understood it, by recording under either the county or the BIA, whichever is first. I would disagree with that, Your Honor. I think Judge Williams got it right, but for the wrong reason. And I think what she was probably thinking was, you know, first in time, first in right. And it was the prior one. Wherever it was recorded, it was prior. And the recordation perfected that security interest, and I think that's what led her to that decision. So the priority is just entirely state law, recording in the county, as not affected by whether you recorded in the agency? Correct. That is exactly right, Your Honor. Because, as I said before, the common law is first in time, first in right, and that can only be altered by a statute. Now, Washington has a statute, and it's very explicit. It says if you've recorded in the county recording office, then you can move ahead as somebody who's unrecorded or recorded later. There is no Federal statute or regulation that discusses any of that. So there could be a Federal statute that did it. The state statute would be inferior to a Federal regulation, wouldn't it? If there were one, yes, Your Honor. If there were one applicable. But there isn't. Congress could have done that. Congress could have said that it's going to be under a body of foreclosure law that's for Indian land, and BIA could have come up with a whole set of rules, but they didn't. In those cases where an Indian has fee simple title to property, where is the deed recorded? Non-trust land. Not trust land. In the county, I believe. Probably also the BIF that's within a reservation. I'm not sure if they recorded those or not in the BIA. But it certainly would be recorded in the county. So your position would be determining priorities, I don't know if this is a fair statement, but determining priorities is sort of part and parcel of effectuating foreclosures. So if foreclosure under the statute is determined in accord with state law, then priorities have to be determined. Absolutely. Absolutely. And I think there's several cases that illustrate this pretty clearly. Under the United States v. Kimball Foods, which is cited in the brief, federal preemption requires clear congressional intent. So if there's some federal statute of regulation or something that's going to trump the state law, there has to be clear congressional intent. And I think the clearest intent is the language of the statute itself. It says state laws. And Congress, as we said before, certainly could have done it differently and there could be BIA regulations, but there aren't. In Kimball, the Supreme Court held that state priority rules applied to federal loan programs where the federal statute is silent as to priority because the incorporation of state law didn't interfere with the federal administration of the loans. A recent case, which is in the supplemental citations that were submitted to the Court, is Barnes v. Grand Haven Hideaway. It shows, I think pretty clearly, the level of specificity that's needed to result in a preemption. In applying Kimball, the Court found that preemption of state foreclosure laws and priority rules for foreclosure under the Federal Multifamily Mortgage Act did preempt state law, but only because the statute and the regulations expressly preempted state lien laws. The stated purpose of that act was, quote, to create a uniform federal foreclosure remedy for multifamily mortgages, unquote. And the implementing regulations expressly established a set of rules that is different from state law. And this is in stark contrast with this case because there is no federal statute or regulation that even addresses priority. It's silent. And, in fact, this says in accordance with state laws. And I think if you look at this on a sort of a continuum of preemption and non-preemption, Barnes is out here. In Barnes, we've got a federal statute that says we're creating a federal system of mortgages and we've got a federal regulation that says these are the priority rules. It preempts. And then you've got Kimball over here. And Kimball says, well, the federal statutes and regulations are silent, so, therefore, we apply state priority rules in a foreclosure. And our case is over here, because not only is a state or the federal regulation and statute silent, but it, in fact, says do it in accordance with the laws of the State. Kennedy. Counsel, you may want to get to the second point about the certificate of approval. The certificate of approval? Well, Your Honor, I don't think that – I guess my first point on that is it's not  There is no cross-appeal on this matter. Counsel did not cross-appeal. Harrison is the only one who submitted an appeal and finally did so in accordance with Federal Rule of Appellate Procedure 6B2B. Emerald had seven days in which to file a response to the statement of issues under Circuit Rule 3-4A. Failed to do so. Emerald had ten days to designate additional record under Federal Rule of Appellate Procedure 6B2B2. It failed to do so. Emerald had ten days after Harrison filed her appeal to file a statement of cross-appeal under Bankruptcy Rule of 8006. Again, it failed to do so. And finally, Emerald – Emerald's contention is not before the Court, is it? It's not before the Court. What would be the answer if it – if we were to think it was before us? If it was – if it – the answer would be if it was before the Court. I would point out to the Court that there is no basis for concluding that there has been any clearly erroneous – clear error, because the judge, the bankruptcy judge, in viewing all the evidence, the undisputed evidence and stipulated facts that were in the record, concluded – and this included a 1994, dated 1994 approval by the BIA. She concluded it was approved and that you didn't have to record it in the BIA to perfect the approval. That's right. That's right. And there were two subsequent written confirmations from the BIA that, in fact, it was approved – I'm not even counting the title status reports – but that it was approved on July 7th, 1994. And there is no factual evidence in the record or anywhere that even suggests that – as counsel says, it suggests that there's something else out there. Well, it's just a fishing expedition. Counsel, you indicated you wanted to reserve some time. Thank you. We'll hear from Emerald. Thank you, Your Honors. Mike Murphy on behalf of Emerald Outdoor Advertising. I'd like to start out briefly to make a key point. Emerald complied with the Federal regulations and laws in place at the time. Gold Eagle, Mr. Sullivan's clients, did not. Now they are trying to change the rules. The rules were clear at the time. And that's what this case is all about. What didn't they comply with? What did they not comply with? What did they not comply with? They did not comply with the requirement that you record all title documents affecting Indian land with the BIA title offices in. I thought the regulation put the onus on the BIA to record the document. The onus does. But that raises the question of whether or not they have a cause of action against the BIA. But, I mean, they don't have to record it. The BIA is supposed to record it. That is correct, Your Honor. Now, when you say they didn't do something or other, it was really the BIA who didn't do something or other. That's probably a fairer characterization. But the step that had to be taken by them to protect their interests vis-à-vis third parties and to provide constructive notice under the BIA regulations was not done. So what you're suggesting, it seems to me, is that there may be an argument with the BIA over whether they did what they were supposed to do and whether there's a cause of action. That's not this case. The question is, has between third parties, innocent takers, and I would point out that there's no dispute in this case that my client took without notice that was undisputed as part of the record, never raised or challenged on appeal. And, in fact, it's a finding in the district court's decision that was not even questioned in this case. So I think that the But does your client have constructive notice from the State filing? No. Because the question there, that implies that the State is the proper place of recording, and that's essentially Mr. Sullivan's argument here. And that is clearly not the law. And you have to back up, and you start with the question of what is trust land? Trust land is an animal. It's a creature of Federal statute and regulation. There is no common law basis for it. It's purely statutory. The law is clear. You look at the Montana Blackfeet case. You look at the Smith case that they've cited from the Eighth Circuit that's more recent, and it is clear that trust land is a creature of statute and regulation. States have no authority over that. In fact, the State court in the Smith case, and consistent with the Landrieu case in this State, court of appeals in this State, says courts have no jurisdiction to adjudicate those matters. State courts have no jurisdiction. The proper place of recording, you look to Federal law. The Federal regulations here are perfectly clear. They tell you exactly what the office of record is. They tell you exactly where to record it, and that is the place of recording. And so the notion that somehow, and I'll get to this in a minute, but the notion that 483A somehow changes that and says that State recording offices are now the proper place of recording is frankly frivolous because that statute doesn't say anything about that. And ---- Well, your client's position is that statute doesn't say anything about recording and priorities. But that statute does say that the foreclosure is in accord with State law. That is correct. Why isn't it necessary to foreclose under State law to determine priorities? Well ---- I mean, in other words, it may be you have a winning argument. At least I don't see how you can say it's frivolous to say that statute embraces determining priorities by State law. No. And what the real nub of the issue, the core issue here is, and I think Judge Whaley got it right, obviously, is that you look to State priorities, but you have to determine the place of recording with respect to Federal law where there is Federal law on that subject for certain, particularly when this is an area that doesn't start with the notion that there's a residual body of State common law that somehow applies. And that's one of the things that is recurring in this line of argument from Gold, Eagle and Harrison, is that somehow State common law applies here. And that is fundamentally erroneous, because this is these are creatures of Federal law. And to the extent that there is Federal common law that applies, then that is used to fill in the interstices or the cracks between the regulations and the statutes. And by interpreting the statutes and regulations to determine what rules apply. And essentially, Judge Whaley did that by saying, I'm going to look at this constructive notice, this BIA recording scheme. I'm going to incorporate the race notice provisions of Washington law, because that's consistent with the BIA recording scheme. To State otherwise or to conclude otherwise defeats the BIA recording scheme and results in a scenario or result that is hostile to the existing Federal regulation. Remember, one thing that's critical here, if you look at the Blackfeet case, you look at the Smith case, the touchstone of State authority here is whether or not Congress has ever delegated any authority to the States on this subject, the subject being recording, okay, of place of recording. And it is clear that Congress has never done that. In fact, to the contrary, Congress delegated that in 25 U.S.C. Section 5 to the BIA or the Department of Interior. And then the BIA established or had for more than 100 years a process of recording and in 1981 established a comprehensive regulatory scheme which other courts have recognized as just that, that that governs this area. And the States have never been delegated any authority to control that. In the absence of any State authority, there is simply no basis for arguing that State recording laws would ever apply. If you look at the Smith case, for example, the Smith case says, and that's the South Dakota, Northwest South Dakota Credit Association v. Smith that Pellitt has cited, that court says that there's not even a Federal cause of action to bring a mortgage foreclosure under 43A. And then it goes on to say, and in fact, you can't even do that in State court because in the absence of a delegation, there's no authority of a State court to have a foreclosure proceeding over trust land. And the court goes on to say you have to go to tribal court, and that's your forum. It is, I think, absurd to suggest that if you can't get into Federal court with a foreclosure action, that somehow the same statute means that State recording laws govern. That makes absolutely no sense. It's completely inconsistent with that authority. Well, what's your suggestion as to what's going on here? Why did Congress pass this law? That's a good question, and we've thought about that and kind of kicked that around. If you look at the legislative history, which is part of the record of 43A, there's really two things going on. One is Congress recognized that there's no Federal mortgage law, no Federal mortgage foreclosure law. There's no common law Federal mortgage foreclosure law. So you've got to look to somewhere for the foreclosure part of that exercise if we're going to allow deeds of trust and mortgages on this land. Secondly, they wanted to keep the United States out of every garden variety foreclosure process as a party because it would be a huge burden. That's what that's about. Is it fair to say that Congress was not thinking through all the permutations of how this might play out? I think the answer is obviously yes. But it is a completely illogical leap of faith to suggest that Congress meant in trying to get the United States as a party out of these cases and trying to shortcut our way to having some mortgage foreclosure laws apply, that it meant to incorporate all of State recording laws and supplant an existing and well-established for over 100 years BIA recording system. It doesn't follow. That's the flawed logic here by the appellant. You can't derive that from this language. And the Smith decision from the Eighth Circuit, I think, confirms that. And it's consistent with the line of cases that, like the Montana Blackfeet U.S. Supreme Court case, that these are creatures of Federal statute, not State law. And, in fact, you know, this whole common law argument is frankly sort of silly. The English common law from the 1500s doesn't even apply in Washington. I'm not sure if I really fully understand where Mr. Sullivan is going with that argument, because even if you look at 483A and it talks about in accordance, subject to foreclosure in accordance with the laws of the State, if there's no tribal law, you then look to the law of the State. What's the priority scheme in the law of the State? And that's what Judge Whaley did. He looked and he said, you know, I'm going to look to that priority scheme. It's clear that there's a recording system. And one of the things that you have to understand is, and Stobach says this very clearly, which they cite and we cite, is that Stobach says the great concept of statutory recording is that its purpose, its only purpose, in effect, is to reverse the order of priorities under the common law rule. And more than half the States follow the race notice. There's either notice or there's pure race. The existence of a recording system supplants any kind of notion of common law first in time, first in right. Well, to make sure I understand, is it your view that either place, a person can record in either place or that the BIA is the exclusive place? The BIA is the exclusive place because there can only be, well, there could be multiple places of recording. The States, of all the places, potential places of recording, if there were a tribal recording system, Federal and State, the only place that there cannot be State recording, in the absence of Federal delegation, is the State. And there cannot be dual recording. I mean, aside from the chaos associated with that, in the absence of a regulation indicating that, and in the absence of some delegation. But the fundamental flaw of that line of logic is that States have no authority over trust land unless delegated by Congress. Congress has never delegated the authority over recording laws to the State of Washington or any other State. This statute, 43A, does not, by its terms, by its legislative history, or by any logical interpretation of it, purport to delegate recording authorities to the State. And this case is really about where is the proper place of recording. And let's step back for a moment and look at the big picture. We have a Federal statute that makes the BIA the proper place of recording for trust land. We have detailed BIA regulations that define what that all means and a hundred-year history of doing it. We have no claim of authority, no citation to any authority, no claim by any jurisdiction in the country to the notion that States are the proper place of recording. We now have a private litigant coming in to this to court and saying, oh, Congress intended something that nobody else has recognized before, and that that is that States are the proper place of recording. And this is something that, Your Honors, you have to understand, is that counsel is not saying dual recording, as the bankruptcy court concluded. Counsel is saying State is the proper place of recording. And that's why Judge Whaley gagged on that notion, I think, because then what do you do with this BIA system, because under that approach the BIA system becomes a legal nullity. And Judge Whaley was not prepared to conclude from this statute that that's what Congress intended. And I don't think that any fair reading of the statute of legislative history gets you there. Well, what about the situation where there are competing liens filed with the BIA plant in Portland, and there's a foreclosure proceeding? What is this? And you're trying to give some validity to the statute. How do you approach that? When you say competing liens, are you talking about mortgage liens? Let's say. Then you would apply the foreclosure laws of the State, and you take the priorities as they come under the BIA recording system, because the BIA recording system, as Your Honors have noted in questioning counsel, provides for constructive notice. And so you would line them up just like you would line up any other foreclosure. You would look. The only question is, where do you look to determine who has a legitimate junior lien? The other backdrop that you have to recognize, and this goes back to the South Dakota case and that line of authority, the more fundamental line of authority regarding transfers of any interest in Indian land, is you don't have a valid interest of any kind unless the BIA has approved it. And so the starting point is you get approval, and as Your Honor pointed out, the BIA is supposed to record it, and there's your record, and that's what you look to to determine who you line up in terms of your lawsuit. And then you either file suit in tribal court, as the Eighth Circuit suggests, or potentially you bring a nonjudicial foreclosure if it's a deed of trust. But the question is, where do you look to see who has junior versus senior interest? And the ---- Well, typically those State rules have to do with recording within the meaning of the State correcting laws. Right. But if you look at, for example ---- right. But now that you're getting into the question of ---- and I agree with counsel on one point, and that is that the BIA regulations do not use the word priority anywhere. And so the question is, what do you do? Judge Whaley took the approach adopted in the Miserea case, the Supreme Court, of you look to State law and borrow what is not hostile to the Federal scheme. And that is certainly one analytical framework. I think that that's certainly the appropriate framework. I don't, frankly, think you have to go to that level because under the ---- if you look at the big picture of the real property law, you don't ---- there's no purpose to a recording system, as Stobuck points out, other than to supplant the common law rule and to establish essentially a rule that says first to record has priority. So that's your starting point, and that's where you begin from. And so I think that ---- so that I would submit that the BIA regulations do establish a priority system based on first to record. If there's any ambiguity about that, it is the job of the Federal judiciary to fill in the interstices of those regulations and to flesh that out, as Judge Whaley did. But it doesn't ---- that's a different pathway of analysis than arguing here that there's a Federal law that says you disregard the existing Federal scheme that's based on a Federal statute that's over ---- that's 100-plus years old, and there's been a process that's existed and people have relied on it. One of the interesting points that counsel has made repeatedly in his briefing is that this would be terrible for the commercial credit system. And if BIA recording applies, that's simply not logical. We have a 100-year history of the BIA being the repository of these documents. And if you just look at the facts of this case, what happens to people's expectations if you suddenly say, oh, no, you played by the rules and the regulations, but you lose because we have this ---- we have decided that State law now is the proper place of recording. I think that would be devastating. It creates a tremendous amount of uncertainty as to what the rules are. We have rules. All we're asking this Court to do is apply them. The only ---- Do we know whether the credit reporting systems take into account the filings in the BIA plan? Absolutely. Yes. I have been involved in transactions involving Indian land. Is it in the record? No. All right. But what is in the record is the testimony of Bruce Story, the manager of Emerald, who said he got a TSR, title status report, in connection with this. There was one other different bank lien ahead of us. Recognize that. This was not on it. The Emerald deed of trust was not on it. They went forward with the transaction. That's not disputed here. The district court found that, the bankruptcy court found that, the district court found that. There's no dispute about that. And so that is in the record. Counsel, before you finish, what is your response to Mr. Sullivan's point that there was no cross-appeal, therefore we don't get to this other issue? Well, we prevailed below, so we were not in an aggrieved party. So there was no requirement that we cross-appeal. We can argue for any issue to support the same result in this court. The rules he cites, 3-4A, says the appellee may respond to the civil appeal statement. It doesn't say anything about that we must respond. And Federal RAP 6B2B2i talks about designating additional parts of the record. That's not an issue here at all. So I just think that's a red herring. He also cites Bankruptcy Rule 806, or 8006, excuse me. That rule governs appeals to district courts, not to this court. So I think that's really a non-issue, and I'd be happy to address real quickly, if you want, the merits of that. Or I can wrap up since I've only got about 40 seconds. It's up to you, Counsel. Okay. Well, let me just touch on that. Let me touch on that issue. And that the PIA approval is a ‑‑ there's clearly an abuse of discretion here because the judge said, Bankruptcy Judge said, we're not going to decide this issue. It stipulated that it's a disputed issue of fact and there's going to be discovery in an evidentiary hearing down the road. And then, lo and behold, and so none of that information is presented. Nothing goes on. And, lo and behold, the judge rules on it as a matter of law without citation to any authority, without the opportunity, essentially, to have our day in court on the issue when the judge told us we weren't going to have that. So that's the substance of that. That's why that's an abuse of discretion. All right. Thank you, Counsel. Thank you, Your Honor. Mr. Sullivan, you have some reserved time. First of all, the 100‑year history, he's referring to the adoption of 25 U.S.C. Section 5, by which Congress authorized now the PIA to keep a record of transactions on Indian land. It doesn't get into priorities. It doesn't get into anything about constructive no's. It doesn't get into anything else. And as far as it being the exclusive place of recording, there's several key points that counsel is missing. First of all, the plain language of the regulation. 25 CFR Section 150.3 says that the PIA is charged with the federal recordkeeping responsibility. His reading would have you ignore the word federal. You shouldn't do that. It's not the only place you can record. And, in fact, there are several cases cited in our brief, including U.S. v. American Horse, where the federal courts acknowledged that the instruments were recorded with the county. In fact, one of them must mention it a half a dozen times. You know, this was executed and it was recorded in X county. So clearly that court didn't think that was something that shouldn't be done. I think more importantly, however, taking that approach that it's the only place it can be recorded really creates some major problems. First of all, what happens to all these tribal recording systems? I mean, the tribes, it's either in accordance with the tribal law or the state law. They should be the same. There shouldn't be any difference. If tribal procedures apply, they're going to apply their own priorities and recording systems. It says a dual system is unworkable. Well, that's what you have with the tribes, a dual system, and it's very workable. And as far as what's commercially reasonable, what lenders really expect out there in the mortgage world, they don't deal with Indian land very often. They expect to see state law rules and state law recordings. That's what they expect to see, and that's what commercial title companies expect. Do you agree with Mr. Murphy that the credit reporting companies do monitor these other filings in the BIA? I don't know. I've never looked at it. The other problem with the idea of the exclusive place of recording being the BIA is one of the statutory prerequisites to foreclosure in Washington law is a specific statutory prerequisite. The deed of trust must have been recorded in the county. So we throw that out too? We have to throw out all kinds of things, it sounds like. So that just doesn't work. It's unworkable, and it's not what the law says. It says the laws of the state, plural, common law, statutory law, whatever. The laws of the state. It doesn't say specifically foreclosure law. It's the laws of the state. And as far as any interfering with the prerogative of the federal government, Congress provided for BIA oversight. Congress certainly could have set up its own foreclosure system and rules, but Congress provided for oversight, and where they provided for it is in the approval process. Consent of the BIA is required before the deed of trust is valid. Once it's approved, however, the federal government doesn't really have any more interest in what happens at the foreclosure because that deed of trust has been granted. It's going to go out. It's not going to be property of the Indian after the foreclosure. It's going to go to sale. So the federal government really has no interest in whose priorities are in there and where the money goes. So that's, again, a non-issue, I think. And as far as the constructive notice and saying that that's – well, first of all, constructive notice isn't the same as priority. You have to have some rules. And if you're going to look to foreclosure, you're going to look – a trustee is going to get a deed of trust to foreclose. They're going to look to state law. They're going to look to the Deed of Trust Act, and they're going to say, okay, I need to give notice to these people. They go to the title company, commercial title company, get a litigation guarantee, tells them who's senior, who isn't senior. One of the things BIA title status reports don't do is tell you who has priority. It is just a list of documents. It has approval dates so you can find out who's actually first in time, first in right. But as we discussed in the brief, there's a lot of problems with the recording system and the sequencing and the numbers and dates and times and all that stuff that are inconsistent in the BIA. But constructive notice is not the same as priority. And as far as Harrison not complying with the rules, I think the Court was right on that. They did everything they were supposed to do. It's the BIA's responsibility to record in their own records after they've approved. They approved it. They failed to record it in their own records until much later. Thank you, Counsel. Before announcing that the case is submitted, I would just like to extend to both Mr. Sullivan and Mr. Murphy our accommodation for a very fine oral argument. Very helpful. I'll second it. Thank you. Thank you very much. The case just argued will be submitted for decision. Hear, see, hear me. All those having had business before this honorable court, the United States Court of Appeals for the Ninth Circuit, shall now depart for this court now stands adjourned.
judges: O'scannlain, Silverman, Gould